DAVID ROSSKAM
David.Rosskam@usdoj.gov
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel:  (202) 514-3974
Fax:  (202) 514-0097
Attorney for Plaintiff United States of America

(see signature pages for complete list of counsel for parties represented)


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

_____
                                                      )
UNITED STATES OF AMERICA,          )
STATE OF IDAHO, and                         )
SAN JOAQUIN VALLEY AIR             )
POLLUTION CONTROL DISTRICT     )
                                                      )
                             Plaintiffs,          )      Case No.  [_____]
            v.                                        )      COMPLAINT
                                                      )
J. R. SIMPLOT COMPANY,                 )
                                                      )
                             Defendant.         )
_____)

## **COMPLAINT**

Plaintiffs, the United States of America, by authority of the Attorney General of

the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency ("EPA"), the State

of Idaho, on behalf of its Idaho Department of Environmental Quality ("IDEQ"), by and

through the Office of the Idaho Attorney General, and the San Joaquin Valley Air Pollution Control District ("SJVAPCD"), file this Complaint and allege as follows:

## NATURE OF THIS ACTION

1.      This is a civil action brought against J.R. Simplot Company ("Simplot" or "Defendant") pursuant to Section 113(b) of the Clean Air Act, ("CAA" or "the Act"), 42 U.S.C. § 7413(b), and applicable State Implementation Plans ("SIPs").  Plaintiffs seek injunctive relief and civil penalties for violations of:  (a) the CAA's Prevention of Significant Deterioration ("PSD") provisions, found at Part C of Title I of the Act, 42 U.S.C. § 7475, and the regulations promulgated thereunder at 40 C.F.R. § 52.21; (b) the CAA's Title V operating permit program, 42 U.S.C. §§ 7661-7661f, and the implementing federal regulations promulgated thereunder at 40 C.F.R. Part 70; and (c) the federally enforceable SIPs developed by the states of California (including regional air districts), Idaho, and Wyoming pursuant to Section 110 of the  Act, 42 U.S.C. § 7410, which incorporate or implement the above requirements, and which establish federally enforceable permitting programs for construction and operation of new and modified sources.

2.      As set forth below, Defendant has violated and continues to violate the statutory and regulatory requirements identified in Paragraph 1 above, by constructing, reconstructing or modifying the sulfuric acid manufacturing plants that it owns and operates in Lathrop, California; Pocatello, Idaho; and Rock Springs, Wyoming, without obtaining the proper permits, installing required control technology, meeting emission limits, or complying with the requirements for monitoring, record keeping, and reporting as required by the CAA.  As a result of their operation, these sulfuric acid plants emit,

*inter alia*, sulfur dioxide ("SO$_2$"), sulfuric acid mist, and fine particulate matter ("PM") into the atmosphere.  SO$_2$, sulfuric acid mist, and PM (including PM of less than 2.5 micrometers in diameter, known as "PM$_{2.5}$") are each a regulated pollutant under the CAA.

3.       Defendant modified, and thereafter operated, each of the five sulfuric acid plants involved in this action, without first obtaining appropriate permits authorizing this construction and/or operation of modifications, and without installing the best available control technology ("BACT") to control SO$_2$ emissions as required by the Act, the Act's implementing regulations, and the applicable SIPs.   In addition, as set forth below, at one of these sulfuric acid plants, Defendant commenced construction of a major modification without obtaining an appropriate permit that would have required BACT for sulfuric acid mist and PM$_{2.5}$.  Moreover, Defendant failed to comply with the requirements of Title V, *inter alia*, by failing to identify BACT emission limitations as applicable requirements for the modified sulfuric acid plants, failing to operate the modified sulfuric acid plants in compliance with such limitations, and failing to submit a compliance plan for all applicable requirements for which the plants were not in compliance.

4.       Defendant's operation of the sulfuric acid plants following their unlawful modification has resulted in excess amounts of SO$_2$ being released into the atmosphere.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

6.      Venue is proper in this judicial district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because some of the violations alleged in this Complaint have occurred, and Defendant is headquartered and conducts business, in this judicial district.  Defendant has consented to venue in this district, and to the participation of the State of Idaho and the SJVAPCD as parties to this action.

## DEFENDANT AND FACILITIES

7.      Simplot is a privately-held food and agribusiness company, incorporated in Nevada, with its principal corporate offices in Boise, Idaho.  Simplot has U.S. operations in ranching, food processing, mining, and fertilizer production and retail in several states.  Among its operations are fertilizer manufacturing plants located in Lathrop, California (known as the Lathrop facility); Pocatello, Idaho (known as the Don Plant or the Pocatello facility); and Rock Springs, Wyoming (known as the Rock Springs facility, which Simplot operates as part of its subsidiary, Simplot Phosphates, L.L.C.).  At each of these locations, Simplot manufactures sulfuric acid from elemental sulfur as part of the process of producing phosphate fertilizer products.

8.      At all times pertinent to this action, Simplot has owned and operated one sulfuric acid plant at the Lathrop facility; owned and operated two sulfuric acid plants at the Pocatello facility, respectively known as the #300 sulfuric acid plant and the #400 sulfuric acid plant; and operated two sulfuric acid plants at the Rock Springs facility, respectively known as the Lurgi plant and the MEC plant, through its wholly-owned subsidiary Simplot Phosphates, L.L.C.

## STATUTORY AND REGULATORY BACKGROUND

9.      The CAA is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population.  CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### National Ambient Air Quality Standards (NAAQS)

10.      Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.  The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  Pursuant to Section 109 of the Act, EPA has promulgated primary and secondary NAAQS for $SO_2$ and PM (including $PM_{2.5}$).  40 C.F.R. §§ 50.4, 50.5, 50.7, 50.13, 50.18.

11.      Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is termed an "attainment" area.  An area that does not meet the NAAQS is termed a "nonattainment" area.  An area that cannot be classified due to insufficient data is termed "unclassifiable."

12.      Section 110(a) of the Act, 42 U.S.C. § 7410(a), requires each state to submit a State Implementation Plan ("SIP") that provides for the attainment and

maintenance of the NAAQS for approval by EPA.  California, Idaho, and Wyoming each have EPA-approved SIPs.

**Prevention of Significant Deterioration (PSD) Requirements**

13.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as attaining the NAAQS standards or as unclassifiable with respect to the NAAQS.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process.  These provisions are referred to herein as the "PSD program."  The PSD program (applicable in attainment and unclassifiable areas), along with requirements that apply in areas designated as nonattainment with respect to the NAAQS, are elements of what is collectively referred to as the "New Source Review" ("NSR") program.

14.     Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contains a PSD program.  A state (or a regional air authority with authority delegated by the state) may comply with Sections 110(a) and 161 by being delegated by EPA with the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations, approved by EPA as part of the state's SIP, on the basis that the state's PSD provisions set forth in the SIP are at least as stringent as those set forth in the federal PSD regulations.  If a state or regional air authority does not have a PSD program that has been approved by EPA and incorporated into that state's SIP, the

federal PSD regulations set forth at 40 C.F.R. § 52.21 must be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

15.    SJVAPCD has been delegated authority by the State of California to act on the State's behalf with respect to sources within the San Joaquin Valley Air District. SJVAPCD administers an NSR program in the San Joaquin Valley Area under the California SIP.  *See* 64 Fed. Reg. 39920 (July 23, 1999) (EPA approval of SJVAPCD NSR rules submitted by the State of California); 40 CFR § 52.270(b).  Before November 26, 2012, the effective date of EPA's approval of the addition of SJVACPD's PSD permitting program to the SIP, see 77 Fed. Reg. 65305 (Oct. 26, 2012), the federal PSD regulations applied to all new major sources and major modifications within the jurisdiction of the SJVAPCD.

16.    EPA approved the State of Idaho PSD program into the federally-enforceable Idaho SIP effective August 22, 1986, and has approved several revisions since that time.  *See* 51 Fed. Reg. 22808 (June 23, 1986); 80 Fed. Reg. 18526 (April 7, 2015) (most recent approval); 40 C.F.R. § 52.683.

17.    EPA approved Wyoming's PSD program as part of the Wyoming SIP on September 6, 1979, and subsequently approved revisions to that program effective August 27, 2004.  *See* 44 Fed. Reg. 51977 (Sept. 6, 1979); 69 Fed. Reg. 44965 (July 28, 2004) (approving restructured and renumbered rules); 40 C.F.R. § 52.2630.

18.    Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as in "attainment" or as "unclassified" unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for

each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates any sulfuric acid plant which emits or has the potential to emit one hundred tons per year or more of any pollutant to be a "major emitting facility."

19.     Section 169(2)(C) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in CAA Section 111(a), 42 U.S.C. § 7411(a)). "Modification" is defined in CAA Section 111(a)(4), 42 U.S.C. § 7411(a)(4), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." A "major modification" under the federal PSD regulations is "any physical change in or change in the method of operation of a major stationary source" that would result in a significant emissions increase of a regulated pollutant and a significant net emissions increase of that pollutant from a major stationary source, *see* 40 C.F.R. § 52.21(b)(2)(i), and the state SIPs applicable to this action define "major modification" in a substantively identical way. A "significant net emissions increase" under the federal PSD regulations (as well as the state SIPs applicable to this action) is 40 tons per year (tpy) or more for $SO_2$, 10 tpy or more for $PM_{2.5}$, and 7 tpy or more for sulfuric acid mist. 40 C.F.R. § 52.21(b)(23)(i).

20.     If a major modification triggers the requirements of the PSD program, the federal PSD regulations (as well as the state SIPs applicable to this action) require the owner or operator of a major stationary source that has undergone a major modification to apply for a permit incorporating emissions limitations meeting BACT for each pollutant as to which a significant emissions increase occurred as a result of the

modification.  40 C.F.R. § 52.21(j).

**Title V**

21.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" as defined in 42 U.S.C. § 7661(2).  The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA, including PSD, SIP and NSPS requirements, are collected in one permit.  Following earlier interim approval, EPA granted final approval to the Title V programs of SJVAPCD on November 30, 2001, *see* 66 FR 63503 (Dec. 7, 2001) and 68 FR 65637 (Nov. 21, 2003) (revised); of Idaho, effective November 5, 2001, *see* 66 Fed. Reg. 50574 (Oct. 4, 2001); and, of Wyoming, effective April 23, 1999, *see* 64 Fed. Reg. 8523 (Feb. 22, 1999)

22.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Title V programs of SJVAPCD, Idaho, and Wyoming approved by EPA, have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

23.     Section 503(b) – (d) of the Act, 42 U.S.C. § 7661b(b) – (d), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the SJVAPCD, Idaho, and Wyoming Title V programs, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

24.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.6, and the SJVAPCD, Idaho, and Wyoming Title V permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT.

**Enforcement Provisions**

25.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the CAA whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of, *inter alia*:  (1) the PSD requirements of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), or any rule promulgated thereunder; (2) Title V of the CAA, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) a SIP or any permit issued thereunder.

26.     Section 113(b) of the Act, 42 U.S.C. § 7413 (b), authorizes EPA to initiate a civil judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation and, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2471, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. § 19.4, the civil penalty that may be sought has increased to up to $27,500 per day for each violation occurring on and after January 31, 1997; up to $32,500 per day for each violation occurring on or after March 15, 2004; and, up to $37,500 per day for each violation occurring on or after January 12, 2009.

27.     IDEQ and SJVAPCD each have independent statutory authority to obtain relief for the violations alleged in this complaint.  *See* Idaho Code §§ 39-108 and 39-109; California Health and Safety Code §§ 41513 and 42403, *et seq*.

## NOTICES

28.     EPA issued a Notice of Violation to Simplot on January 26, 2009 for undertaking major modifications, without applying for or obtaining a PSD permit and a BACT limit for $SO_2$, at the #300 and the #400 Sulfuric Acid Plants at Simplot's Don Plant (Pocatello facility).

29.     EPA issued a Notice of Violation to Simplot on December 3, 2013 for undertaking major modifications, without applying for or obtaining a PSD permit and a BACT limit for $SO_2$, at the sulfuric acid plant at the Lathrop facility.

30.     EPA issued a request for information to Simplot on September 29, 2008 concerning modifications to the Rock Springs facility's MEC and Lurgi sulfuric acid plants that may have first required a PSD permit.  Simplot responded to this information request on January 23, 2009.  EPA undertook an initial analysis of Simplot's response to the information request and identified projects undertaken by Simplot at the MEC and Lurgi plants that may have given rise to liability under the PSD provisions of the CAA with respect to $SO_2$ emissions from these plants.

31.     Notice of the commencement of this action has been given to the appropriate State air pollution control agencies in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b).  EPA has provided notice to Defendant and to the States of Idaho, Wyoming, and California (through its delegated authority, the SJVAPCD) of its finding of the violations alleged in this complaint, and the 30-day period established in 42 U.S.C.

11

§ 7413(b)(1) between the provision of such notice and the filing of this action has
elapsed.

## GENERAL ALLEGATIONS

32.     At all times relevant to this Complaint, each of the Lathrop, Pocatello, and
Rock Springs facilities has been a "major emitting facility" and "major stationary
source," within the meaning of the Act.

33.     At all times relevant to this Complaint, each of the sulfuric acid plants
located at the Lathrop and Rock Springs facilities has been located in an area designated
as unclassifiable for $SO_2$; the sulfuric acid plants located at the Pocatello facility has been
located in an area designated as attainment or unclassifiable for $SO_2$ and $PM_{2.5}$.

## FIRST CLAIM FOR RELIEF
### (PSD Violations)

34.     Paragraphs 1 through 33 are realleged and incorporated herein by
reference.

35.     Defendant commenced construction of one or more major modifications,
as defined in the Act, of the sulfuric acid plants located at its Lathrop, Pocatello, and
Rock Springs facilities.

36.     At the sulfuric acid plant at the Lathrop facility, the major modifications
Simplot made included one or more physical changes, including, but not necessarily
limited to, the interpass tower packing replacement, performed from March to August,
1999, and the replacement of two gas to gas heat exchangers with a single larger heat
exchanger, performed from May 2002 to January 2003.  Such modifications resulted in
significant emissions increases and significant net emissions increases, as defined by the
relevant PSD regulations, of $SO_2$.  Each such modification violated the PSD provisions of

the applicable SIP, enforceable by EPA under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

37.    At the sulfuric acid plants at the Pocatello facility (the Don Plant), the major modifications Simplot made included, but were not necessarily limited to:  (a) repairs and replacements of components (e.g., repairing the 98% pump tank, installing a brick lined dilution tank, replacing the waste heat boiler, repacking the final absorption tower, installing new economizer and cooling tower cell) at the #400 sulfuric acid plant in 1991-92; (b) changes to the #300 sulfuric acid plant in 1996 to increase that plant's production capacity (e.g., re-machining of the primary air mover, upgrading of steam turbine drive, upgrading of sulfur burners and feed pumps, revising size and flow of process air ducts, increasing height of second converter bed, and installing new heat exchanger); (c) changes at the #300 sulfuric acid plant in 2001 to replace aging process equipment (e.g., replacing converter, drying tower, 98% acid pump tank, superheater, boiler feed water pumps, scrubber packing, scrubber demister mesh pad, and scrubber mist eliminators); and (d) replacement of the Main Acid Cooler at the #300 sulfuric acid plant in July 2009.  Each of these modifications resulted in significant emissions increases and significant net emissions increases of $SO_2$, triggering the requirement for Simplot to (1) apply for and obtain a PSD permit prior to construction of the modification, (2) apply BACT on the #300 and #400 sulfuric acid plants, and (3) demonstrate that each modification did not cause a significant deterioration in air quality, all in accordance with the Idaho SIP.  Simplot's failure to do so violated the Idaho SIP, enforceable by EPA under Section 113 of the Act, 42. U.S.C. § 7413, and 40 C.F.R. § 52.23.

13

38.     At the Pocatello facility (Don Plant), Simplot undertook changes in 2012 to the #400 sulfuric acid plant (e.g., replacing final absorbing tower, including mist eliminators).  Simplot sought prior authorization (via permit application) for these changes from the IDEQ.  However, Simplot began actual construction of these changes without first receiving a permit.  The project was a major modification with respect to $PM_{2.5}$ and sulfuric acid mist, triggering the requirement for Simplot to (1) apply for and obtain a PSD permit prior to construction of the modification, (2) apply BACT on the #400 sulfuric acid plant, and (3) demonstrate that the proposed modification did not cause a significant deterioration in air quality, all in accordance with the Idaho SIP.  Simplot's failure to do so violated the Idaho SIP, enforceable by EPA under Section 113 of the Act, 42. U.S.C. § 7413, and 40 C.F.R. § 52.23.

39.     At the sulfuric acid plants at the Rock Springs facility, after a reasonable opportunity for further investigation or discovery, it is likely that the evidence will show, and it is therefore alleged, that Defendant undertook one or more major modifications to the Lurgi and/or MEC sulfuric acid plants that resulted in significant emissions increases and significant net emissions increases of $SO_2$.  Each such modification violated the PSD provisions of the Wyoming SIP, enforceable by EPA under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

40.     Unless restrained by this Court, these violations will continue.

41.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), these violations subject Defendant to injunctive relief and civil penalties.

**SECOND CLAIM FOR RELIEF**
(Title V Violations)

42.     Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43.     As set forth above, Defendant modified the sulfuric acid plants at the Lathrop, Pocatello, and Rock Springs facilities in a manner that required compliance with the applicable PSD and SIP regulations.  These modifications triggered the requirements to, *inter alia,* undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and to operate in compliance with such limitations.  Defendant failed to satisfy these requirements.

44.     Defendant failed to submit a complete application for a Title V operating permit for each of the facilities so modified that would have identified all applicable requirements, accurately certified compliance with such requirements, and contained a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a determination under PSD).  Defendant failed to obtain a proper or adequate Title V operating permit for any of its sulfuric acid plants that contained emission limitations for $SO_2$  (or, where applicable, sulfuric acid mist and $PM_{2.5}$) that met BACT.  Defendant thereafter operated each of its sulfuric acid plants without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance, in violation of Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§

15

7661a(a), 7661b(c), and 7661c(a), and the state Title V operating permit program requirements.

45.     Unless restrained by this Court, these violations will continue.

46.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), these violations subject Defendant to injunctive relief and civil penalties.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above, Plaintiffs request that this Court:

1.     Permanently enjoin Defendant from operating the sulfuric acid plants at the Lathrop, Pocatello, and Rock Springs facilities identified herein, including the construction of future modifications, except in accordance with the Clean Air Act and the applicable SJVAPCD, Idaho, and Wyoming regulatory requirements;

2.     Order Defendant to remedy the violations by, among other things, requiring Defendant to install and operate BACT on each of the sulfuric acid plants at the Lathrop, Pocatello, and Rock Springs facilities for the control of $SO_2$ emissions, and for the control of sulfuric acid mist and $PM_{2.5}$ at the #400 Plant at the Pocatello facility;

3.     Order Defendant to apply for and comply with permits for each of the sulfuric acid plants at the Lathrop, Pocatello, and Rock Springs facilities that are in conformity with the requirements of the PSD provisions of the Act and each applicable SIP, as well as the requirements of Title V;

4.     Assess a civil penalty against the Defendant of up to $25,000 per day for each violation occurring prior to January 30, 1997; up to $27,500 per day for each violation occurring after January 30, 1997 and through March 15, 2004; up to $32,500 per day for each violation occurring after March 15, 2004 and through January 12, 2009; and, up to $37,500 per day for each violation occurring after January 12, 2009.

5.     Award Plaintiffs their costs of this action; and,

6.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

SAM HIRSCH
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/ _____
DAVID ROSSKAM
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 514-3974
Fax:  (202) 514-0097
david.rosskam@usdoj.gov


WENDY J. OLSON
United States Attorney
District of Idaho

SYRENA CASE HARGROVE, ISB# 6213
Assistant U.S. Attorney
District of Idaho
Washington Group Plaza
800 Park Boulevard, Suite 600
Boise, ID 83712-9903
(208) 334-9122
Syrena.Hargrove@usdoj.gov


OF COUNSEL:

VIRGINIA SORRELL
Attorney Adviser
Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1595 Wynkoop St. (8MSU)
Denver, CO 80202-1129

DAVID KIM
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9 (ORC-2-1)
75 Hawthorne Street
San Francisco, CA 94105

SHELDON MULLER
Senior Attorney
U.S. Environmental Protection Agency
Region 8 (8ENF-L)
1595 Wynkoop St.
Denver, CO 80202-1129

JULIE VERGERONT
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10 (ORC-158)
1200 Sixth Avenue, Suite 900
Seattle, WA 98101

FOR THE STATE OF IDAHO:

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/_____
LISA J. CARLSON
Deputy Attorney General
Office of the Idaho Attorney General
Natural Resources Division
Environmental Quality Section
1410 N. Hilton, 2nd Floor
Boise, ID  83706
Tel:  (208) 373-0494
Fax:  (208) 373-0481
lisa.carlson@deq.idaho.gov

FOR THE SAN JOAQUIN VALLEY AIR
POLLUTION CONTROL DISTRICT:


/s/_____
MATT BEETER, ISB #7936
Law Office of Matthew J. Beeter
770 S. 13th St. #9752
Boise, Idaho 83707
Ph:  208-914-1177
Fax:  208-549-7856
matt@mjbeeter.com




OF COUNSEL:

ANNETTE BALLATORE-WILLIAMSON
District Counsel
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Ave.
Fresno, CA  93726
(559) 230-6033

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of December, 2015, I filed the foregoing document electronically through the CM/ECF system, and that on such date I served the foregoing document via first class mail, postage prepaid, to the following:

Krista K. McIntyre
Stoel Rives LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702-7705,
(Attorney for Defendant J.R. Simplot Company)

Lisa J. Carlson
Deputy Attorney General
Office of the Idaho Attorney General
Natural Resources Division
Environmental Quality Section
1410 N. Hilton, 2nd Floor
Boise, ID 83706
(Attorney for Plaintiff State of Idaho)

Matt Beeter
Law Office of Matthew J. Beeter
770 S. 13th St. #9752
Boise, Idaho 83707
(Attorney for Plaintiff San Joaquin Valley Air Pollution Control District)


/s/_____
DAVID ROSSKAM
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-3974
Fax: (202) 514-0097
david.rosskam@usdoj.gov